## MERSMAN v. WERGES and another.

(*Circuit Court, D. Iowa.*    June 23, 1880.)

1. FORGERY—ACCOMMODATION NOTE—INNOCENT INDORSED.—The accommodation note of an individual partner, secured by a mortgage upon the wife's separate property, and made for the benefit of the firm, is utterly void in the hands of an innocent indorsee, as against the wife of the maker, where the name of the wife was forged, prior to indorsement, as the joint maker of such note, by the payee and managing partner of the firm.

2. SAME—SAME—MORTGAGE.—The mortgage given to secure the note, although duly executed by the husband and wife, is rendered void by such forgery.

3. JURISDICTION—FORECLOSURE—ASSIGNOR AND ASSIGNEE.—In such case a federal court could not assume jurisdiction of a suit by the assignee upon the mortgage alone, when the assignor and the mortgagor are both citizens of the same state.

*Sheldon* v. *Sell*, 8 How. 441, followed.

In Equity.

*Wright, Gatch & Wright,* for complainant.

*J. O. Crosby* and *Parsons & Runnells,* for respondents.

LOVE, D. J.   This is a bill to foreclose a mortgage upon certain lands, the property of Lucy W. Werges, situated in Clayton county, Iowa.   The husband, Casper A. Werges, joined in the mortgage without any title to the lands, or any interest, except what the law gives him.   The essential facts are as follows:

Casper A. Werges, with one E. H. Kreuger, now deceased, was engaged in the milling business at Clayton county, Iowa, under the firm name of Kreuger, Werges & Co.   E. H. Kreuger was the managing partner.   Werges seems to have been committing the business to his exclusive control.   Kreuger went to St. Louis and agreed with the complainant for a loan of $6,000 to the firm of Kreuger, Werges & Co., and for their use and benefit.   To secure this loan, Casper A. Werges executed his note, payable to the order of Kreuger, his partner. The mortgage in question was also executed and delivered, with the note, to Kreuger.   Kreuger, while the note was in

his possession, and before its delivery to the complainant, forged the name of Mrs. Werges to the note. He indorsed this forged note to the complainant, placed the mortgage in the hands of the recorder for record, and received the $6,000, for which the note and mortgage were given.

The complainant was wholly ignorant of the forgery, and in nowise implicated in it. His perfect good faith in the transaction cannot be impugned. I find the fact to be that Kreuger committed the forgery of Mrs. Werges' name. There is no direct evidence to establish the fact, but the negative and circumstantial evidence is, to my mind, conclusive.

It is in evidence, and not, I think, seriously questioned, that when the note passed into the hands of Kreuger the name of Mrs. Werges was not signed to it. Her name was placed upon the note by somebody who had an interest in so doing. Neither she nor her husband signed her name to the note. Her name was put to the note without her knowledge or consent. There is no evidence that the note was ever in the possession, after its delivery to Kreuger, of any person but Kreuger and the complainant. The complainant did not commit the forgery. This is conceded. Who, then, did commit the forgery? It must have been some one who had an interest in the note, and a motive to commit the crime. No stranger to the note, without interest or motive, would have forged Mrs. Werges' name, or could have done it without possession of the note. Casper A. Werges did not sign his wife's name to the note. She did not subscribe her name to it. Mersman did not. It was never, that we know of, in the hands of any stranger to the instrument. The inevitable conclusion is that Kreuger committed the forgery.

We can easily find a motive moving Kreuger to use the name of Mrs. Werges as he did. He probably found or apprehended difficulty in negotiating the note to Mersman without the name of Mrs. Werges. It is admitted by the complainant's counsel that it was understood by both Kreuger and Mersman that the note was to be signed by Mrs. Werges. This being the case, Kreuger had reason to believe that he

could not get the money from complainant without the signature of Mrs. Werges to the note.

In order, therefore, to get the money Kreuger forged the name of Mrs. Werges to the note.

Perhaps he assumed in his own mind that he might do this with impunity, if not propriety, since by signing her name he would not substantially increase her liability, seeing that she had agreed to pledge her land by mortgage for the debt; or it is possible that to Kreuger's mind it appeared that the name of Mrs. Werges to the note would, under the circumstances, be at most a mere matter of form.

The note and mortgage must be treated as one contract. The parties evidently so intended them. They were delivered together, and at the same time, as security for the debt. The complainant would not otherwise have received them, and advanced the money upon them. Considered in this light, they must be construed together, and their true character is that of accommodation paper. The paper was especially such as to Mrs. Werges, who received no consideration whatever for executing the mortgage. Casper A. Werges executed the note for the accommodation of the firm to which he belonged, and his wife joined him in the mortgage to secure the same. She was clearly a surety for the firm of Kreuger & Werges. She executed the mortgage for the accommodation of that firm. The note and mortgage were in form given to Kreuger, and made payable to his order, to enable him to indorse the note, and thus transfer both note and mortgage to the complainant as security for the money to be loaned by the plaintiff to the firm.

While the note and mortgage were in the hands of Kreuger, and before the transfer, Kreuger forged Mrs. Werges' name to the note. He thus entirely changed her relation to the transaction. He made her a principal instead of a surety in the contract evidenced by the note and mortgage. Can it be doubted that the moment Kreuger changed the contract without Mrs. Werges' consent she was released? She signed the contract for the accommodation of the firm. A member of the

firm so changed it, without her authority, as to make her a principal instead of an accommodation party. Surely, then, the note and mortgage ceased, as to her, to have any validity in the hands of Kreuger, and Kreuger could transfer to the complainant no better title as against Mrs. Werges than he himself had. The contract evidenced by the note and mortgage was not Mrs. Werges' contract after the forgery of her name to the note, and it could not be made her contract by its transfer to the complainant. The instrument which Mrs. Werges signed was not negotiable, and the note ceased to be so in the hands of Kreuger after he destroyed its identity, and made it a different note from that which the parties had signed, by the forgery of Mrs. Werges' name to it.

Suppose a party holding negotiable paper delivered to him for his own accommodation, for the purpose of enabling him to raise money upon it, makes a material alteration of it, and then passes the paper for value to an innocent indorsee. Can the original accommodation makers be held upon the paper? Clearly not, because the paper passed to the innocent indorser is not the deed of the accommodation makers. Nothing is better settled in the law of negotiable paper than that those defences which go to the very inception and validity of the paper may always be set up against an innocent holder of the paper. Hence, where the name of a party has been forged to a negotiable bill or note, or where it has been executed without his authority, it is utterly void as against him in the hands of an innocent holder or indorsee. The same rule must undoubtedly hold as to any material alteration made after its execution or indorsement, when it is sought to enforce the paper against the maker or indorser. Suppose the holder of a note for one thousand dollars should change it to two thousand dollars, and then indorse it before due for value, could the maker be made liable upon it? Would such an instrument be the deed or contract of the maker? Would the holder have any authority whatever to bind the maker by indorsing it over for value?

But is insisted that, even setting aside the note as utterly null and void, this suit can be maintained upon the mortgage

alone; that Mrs. Werges undeniably executed the mortgage, and her genuine signature to it; that the real consideration of the mortgage was the debt of $6,000 due from the firm of Werges & Kreuger to the complainant; that the note was at most but evidence of that debt; and that the real purpose and intention of Mrs. Werges in giving the mortgage was to secure the debt. Hence, it is argued that the provision of the mortgage, that it should stand as a security for the payment of the note of Casper A. Werges to E. H. Kreuger, was more a matter of form than substance, and that it can be no wrong to Mrs. Werges to compel payment by the sale of her property of the very debt that she purposely pledged it to pay.

It will be seen that this argument is exceedingly ingenious and plausible. It is, however, in my judgment, untenable.

Mrs. Werges saw fit to pledge her land by mortgage to pay a note executed by her husband to Kreuger. *Non constat* that she would have mortgaged her property in any other form. If she had been asked to give a mortgage to secure the debt of the firm of Kreuger & Werges to the plaintiff, she might, for aught we know, have refused. Parties may contract in a certain form, and they have a right to do so. The law cannot change their contract, and hold them to the substance of it in a wholly different form.

The debt in this case was not Mrs. Werges'. The consideration did not move to her. Her property is bound for it only by virtue of her express contract. She cannot be made liable on the ground that she received the consideration, and therefore that, irrespective of the written evidence, she is bound to pay the debt. She can be made liable for the debt only in pursuance of the terms of her written contract, and not otherwise. In order to have fixed her liability, or rather that of her property, it would have been necessary, as the contract was actually made for Mersman, to present the note to Casper Werges, the maker, and protest it for non-payment. Setting aside the note as a part of the contract, and proceeding directly upon the mortgage, no demand, notice, or protest was necessary. In a word, by treating the note as a nullity, and proceeding directly on the mortgage, a

collateral and conditional liability would be changed into a direct and absolute liability.

Again, as the contract was, in fact, made, Mrs. Werges was a surety for her husband. She pledged her property, without consideration to her, for his debt. If we set aside and disregard the note, and proceed upon the debt and mortgage directly, she becomes a joint debtor with her husband upon the face of the contract of mortgage. She is a joint obligor with her husband, and in order to entitle herself to any of the rights of a surety she must resort to parol evidence, showing her true relation to the debt. In a word, by setting aside the note, to which the mortgage was a more incident, and treating the mortgage as the evidence of indebtedness, we change the position of Mrs. Werges upon the face of the written contract from that of a surety, which she was, to that of a principal debtor, which she was not. Again, the debt was, in fact, not that of her husband individually. It was the debt of the firm. By charging her directly upon the mortgage, making the debt, not the note, the basis of her liability, she becomes the surety not of her husband, which she in fact was, but the surety of the firm of Kreuger & Werges, which she in truth was not.

Lastly, if we reject the note and count exclusively upon the mortgage, the jurisdiction here clearly fails. The mortgage was not a negotiable instrument; it was given to Kreuger in his name, and by him assigned by delivery to the complainant. Kreuger could not have sued these defendants in this court upon the mortgage, being himself a citizen of Iowa. Therefore, his assignee, the complainant, cannot maintain an action here. The complainant is clearly within the prohibition of the judicial act, and the amendatory act of 1875. See *Sheldon* v. *Sell*, 8 How. 441, 449.